## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARLON J. McGASTER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:18-00321-N** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| ***Commissioner of Social Security,***[1] | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marlon J. McGaster brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[2]  Upon

---

[1] Having been sworn in on June 17, 2019, Commissioner of Social Security Andrew M. Saul, as successor to Acting Commissioner Nancy A. Berryhill, is automatically substituted as the Defendant in this action under Federal Rule of Civil Procedure 25(d).  (*See* https://www.ssa.gov/agency/commissioner.html & https://blog.ssa.gov/social-security-welcomes-its-new-commissioner (last visited Sept. 17, 2019)).  This change does not affect the pendency of this action.  See 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").  The Clerk of Court is **DIRECTED** to update the docket heading accordingly.

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. §

consideration of the parties' briefs (Docs. 13, 14) and those portions of the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** under sentence four of § 405(g).[3]

## I.    *Background*

McGaster filed an application for a period of disability and DIB with the Social Security Administration ("SSA") on October 7, 2015, and an application for SSI on November 17, 2015. After they were initially denied, McGaster requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review, which was held on February 22, 2017. On August 9, 2017, the ALJ issued an unfavorable decision on McGaster's applications, finding him not disabled under the Social Security Act and thus not entitled to benefits. (*See* R. 10 – 24).

The Commissioner's decision on McGaster's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's decision on June 14, 2018. (R. 1 – 5). McGaster subsequently brought this action under § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final

---

1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 17, 18).

determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)

(alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4] "In determining whether substantial evidence exists, [a

---

[4]     Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it...' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added).
        Moreover, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*,

court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here…reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole.").

---

26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3));  *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue').").

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference

and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[5]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[5] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work,

_____

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

## III.    *Summary of the ALJ's Decision*

At Step One, the ALJ determined that McGaster met the applicable insured

status requirements through June 30, 2016, and that he had not engaged in substantial gainful activity since the alleged disability onset date of May 2, 2015.[7] (R. 17). At Step Two, the ALJ determined that McGaster had the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy; lumbago; extruded disc of the cervical spine with severe neuroforaminal stenosis and indentation of the spinal cord; brachial neuritis; congenital pes planus bilateral feet; chronic pain syndrome; and scoliosis of the thoracic spine. (R. 17 – 18). At Step Three, the ALJ found that McGaster did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P. (R. 18).

At Step Four,[8] the ALJ determined that McGaster had the residual

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202– 03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

[8] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth

functional capacity (RFC) "to perform less than the full fange [sic] of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[,]"[9] with the following limitations: McGaster "can lift/carry up to ten pounds occasionally[;] can sit for eight-hours in a regular eight-hour workday[;] can stand/walk for two hours at one time and a maximum of two hours per eight-hour workday[;] can push/pull arm controls[;] is unable to climb ladders, ropes, or scaffolds[;] is unable to crawl[;] cannot perform overhead work[;] can reach in other directions occasionally[;] cannot operate handheld vibratory equipment like a jackhammer[;] should not work around unprotected heights[; and] can handle, finger and feel frequently." (R. 18 – 22).

Based on this RFC, the ALJ determined that McGaster was unable to perform any past relevant work. (R. 60). At Step Five, after considering the

step...20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[9] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations ... Each classification ... has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

testimony of a vocational expert,[10] the ALJ found that there exist a significant number of jobs in the national economy that McGaster could perform given his RFC, age, education, and work experience. (R. 23 – 24). Thus, the ALJ found that McGaster was not disabled under the Social Security Act. (R. 24).

## IV. *Analysis*

McGaster claims that the ALJ's RFC is not supported by substantial evidence,[11] presenting a host of arguments in support. First, he asserts that "[t]he medical evidence of record supports a more limiting residual functional capacity than the one assigned by the" ALJ. (Doc. 13 at 4). Even if true, that alone would not mandate a finding of reversible error. "The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence." *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam). *See also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a

---

[10] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

[11] McGaster erroneously claims that the RFC determination was made "at the fifth step of the sequential evaluation." (Doc. 13 at 2). As noted previously, the RFC is determined at Step Four, where the burden remains with a claimant to show an inability to perform past relevant work.

finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner."). Therefore, the Court need not concern itself with what other factual conclusions a record could reasonably support; rather, what matters is "whether there is substantial evidence in the record as a whole to support the [Commissioner]'s findings." *Owens*, 748 F.2d at 1514.

"To a large extent, M[cGaster] questions the ALJ's RFC determination based solely on the fact that []he has [various impairments]. However, the mere existence of these impairments does not reveal the extent to which they limit h[is] ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. While McGaster correctly observes that an ALJ "cannot simply cherry-

pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding[,]" *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (per curiam), "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)). *See also Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (ALJ must analyze all evidence but need only explain the weight given to "obviously probative" exhibits). Thus, in a similar vein, McGaster cannot show error simply by cherry-picking facts from the record that are more supportive of a finding of disability. *Cf. Owens*, 748 F.2d at 1514 ("[W]e evaluate the [Commissioner]'s findings *in light of the entire record*, not only that evidence which supports her position." (emphasis added)). Indeed, simply citing various portions of the record, without explaining how they detract from specific findings in the ALJ's decision, effectively invites the Court to decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's, which it may not do. *Winschel*, 631 F.3d at 1178.

McGaster also argues that the ALJ improperly assigned only "some weight" to the medical opinion of consultative examining orthopedist Dr. Suanne White-Spunner.[12] The ALJ rejected the "most restrictive limitations" in Dr. White-

---

[12] " 'Medical opinions are statements from physicians and psychologists or other

acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citation omitted). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. An "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam).

"The opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.' " *Phillips*, 357 F.3d at 1240 (quoting *Lewis*, 125 F.3d at 1440)). On the other hand, the opinions of non-treating physicians "are not entitled to deference ..." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). *Accord Everett v. Soc. Sec. Admin., Comm'r*, No. 18-13697, 2019 WL 2522201, at *2 (11th Cir. June 19, 2019) (per curiam) (unpublished) ("Opinions by one-time examiners are not entitled to deference or special consideration." (citing *McSwain*, 814 F.2d at 619)); *Machuat v. Acting Comm'r of Soc. Sec.*, 773 F. App'x 490, 492 (11th Cir. 2019) (per curiam) (unpublished) ("As a one-time examiner, Dr. Rodriguez's opinions were unentitled to deference." (citing *McSwain*, 814 F.2d at 619)); *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 750 (11th Cir. 2018) (per curiam) (unpublished) ("[T]he opinions of non-treating examiners are not entitled to deference or special consideration." (citing *McSwain*, 814 F.2d at 619)); *Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 857 (11th Cir. 2018) (per curiam) (unpublished) ("An ALJ generally gives an opinion from an examining physician greater weight than a non-examining physician, but the agency's rules do not provide that an examining physician's

Spunner's opinion because Dr. White-Spunner "noted that there were 'very few objective findings' to support the limitations. Additionally, Dr. White-Spunner indicated that [McGaster]'s effort was inconsistent during the consultative examination." (R. 22). Upon consideration, the undersigned agrees with McGaster that the ALJ did not provide adequate reasons for partially discounting Dr. White-Spunner's opinion.

An ALJ's decision must be both "reasonable and supported by substantial evidence[,]" and such a determination must be made based on "the record as a whole…" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (quotation marks omitted). Moreover, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor[,]" *Winschel*, 631 F.3d at 1179; the Court cannot affirm an ALJ's decision in this regard based on reasons the ALJ did not articulate. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("[T]he courts may not accept … *post hoc* rationalizations for agency action."); *Owens*, 748 F.2d at 1516 ("We decline … to affirm simply because some rationale might have supported the ALJ's conclusion. Such an approach would not advance the ends of

_____

opinion may receive 'controlling weight' as a treating source might.").
    On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical opinions; however, those revisions apply only to claims filed on or after March 27, 2017, and are thus inapplicable to McGaster's present applications. *See* 20 C.F.R. §§ 404.1520c, 416.920c; 82 Fed. Reg. 5844-01, 2017 WL 168819.

reasoned decision making." (footnote omitted).[13]  The ALJ rejected the more limiting aspects of Dr. White-Spunner's opinion based solely on its purported inconsistency with Dr. White-Spunner's notes, without claiming it was inconsistent with other portions of the record.  However, considering Dr. White-Spunner's notes and opinion as a whole, the ALJ's claimed inconsistencies do not provide substantial evidence for partially discounting the opinion.

The ALJ's assertion that Dr. White-Spunner noted "very few objective findings" to support the "most restrictive limitations" in her opinion misquotes, and omits important context from, Dr. White-Spunner's statements.   Dr. White-Spunner's full remark was:

> [McGaster] has documented herniation of the cervical spine that could account for his pain.  He has surprisingly few objective findings such as changes and reflexes or muscle atrophy.  In spite of this I think he has substantial pain from the disc.  He is capable of activities, however I think his speed will be diminished to a point where he is not employable.

---

[13] *See also Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (per curiam) (unpublished) ("The Commissioner argues that Dr. Janush's opinion was rendered two years after Dempsey's last insured date and there is no specific medical evidence that Dempsey had mental limitations during the period she was insured. However, the ALJ did not offer this explanation in his decision. We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.' *See Owens*, 748 F.2d at 1516."); *Hubbard v. Colvin*, 643 F. App'x 869, 873 (11th Cir. 2016) (per curiam) (unpublished) ("Despite identifying multiple 'careless' errors in the ALJ's opinion, the district court relied on Hubbard's work history, 'along with his ability to perform basic personal tasks like driving, paying bills, and performing self-care functions,' to affirm the ALJ's decision ... [I]n relying on evidence of Hubbard's ability 'to perform basic personal tasks,' the district court affirmed based on its own post hoc rationale. However, we decline to affirm using reasoning that 'might have supported the ALJ's conclusion' but was not offered by the ALJ himself. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam).").

(R. 287). From her full statement, it is apparent that, in her professional judgment, Dr. White-Spunner believed McGaster's cervical spine herniation, itself an objective finding, was indicative of disabling pain, despite the lack of additional bolstering objective indicators "such as changes and reflexes or muscle atrophy."[14] This reading is bolstered by Dr. White-Spunner's use of the word "surprisingly" (which the ALJ misquoted as "very"), suggesting that Dr. White-Spunner believed this condition was of such severity in itself that it should have resulted in other observable effects. Considering the entirety of Dr. White-Spunner's statement, the ALJ's interpreting it to simply note "very few objective findings" is an unreasonably broad determination that does not substantially support her decision to partially reject Dr. White-Spunner's opinion.[15]

The ALJ's finding that McGaster's "effort was inconsistent during the consultative examination" – which appears to imply a deliberate attempt to

---

[14] In the context of analyzing a claimant's subjective complaints regarding pain, an objectively determinable medical condition by itself can support allegations of disabling pain if it is of sufficient severity. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam) ("This court has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.").

[15] The ALJ also cited Dr. White-Spunner's notes as indicating McGaster reported he "is able to drive a car and shop for groceries" (R. 21). However, this omits the fact that Dr. White-Spunner also noted that McGaster reported it "hurts" to do those activities "so he doesn't do it." (R. 284 – 285). These notes are consistent with McGaster's hearing testimony (*see* R. 44 – 46), and McGaster's claim that he avoids doing activities he would otherwise be capable of because of his pain tends to support, not detract from, Dr. White-Spunner's opinion.

manipulate results – is also insubstantial considering Dr. White-Spunner's notes as a whole.  With regard to this purported "inconsistent efforts," Dr. White-Spunner noted:

> Initial exam of the cervical spine, he would only allow very limited motion.  His flexion was only about 10°.  As we proceeded through the remainder had [sic] this exam, he was noted to drop his chin all the way to the chest level.  His rotation was also improved when observing him reaching to the right to get his clothing.  It was twice what we found in exam.

(R. 287).    However, Dr. White-Spunner gave no indication she believed that McGaster was malingering or otherwise intentionally amplifying his impairments, nor did she qualify her findings due to McGaster's purported "inconsistent efforts." Indeed, Dr. White-Spunner was quite aware of those "inconsistent efforts," incorporated the aforementioned observations into her scoring of McGaster's range of motions by changing initial scores for cervical spine flexion and right lateral spine movements to account for the increased range of motion observed.  (*See* R. 288).    Considering her notes and opinion as a whole, there is no reason to believe that Dr. White-Spunner did not already account for McGaster's "inconsistent efforts" in rendering her opinion.[16]  Thus, those purported "inconsistent efforts" did

---

[16] *See Kirkland v. Colvin*, No. CV 15-00046-N, 2016 WL 632582, at *7 (S.D. Ala. Feb. 17, 2016) (holding that "ALJ was not free to infer magnification at [medical] examination" based on fact that the claimant initially "demonstrated no ability to flex her lumber [sic] spine much less get out of her chair" but later "could bend over 80 degrees to get her handbag off the floor[,]" "when [the physician] himself made no such suggestion in his objective observations" (quotation omitted)); *Cooke v. Colvin*, No. CV 14-00584-N, 2016 WL 110510, at *9 (S.D. Ala. Jan. 8, 2016) (disapproving of an ALJ "making his own use of the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.)[ to] independently determine that malingering 'should be strongly suspected' " by a claimant during a consultative

not provide substantial reason to partially discount Dr. White-Spunner's opinion.

Even when considered together, the ALJ's stated reasons for partially rejecting Dr. White-Spunner's opinion do not add up to substantial evidence supporting that decision. And given that Dr. White-Spunner's opinion appears to suggest greater limitations than those found by the ALJ, the ALJ's failure to provide adequate reasons for rejecting the opinion's more limiting aspects cannot be considered harmless. Accordingly, reversible error has been shown in that regard.[17]

McGaster requests that the Commissioner's decision "be reversed and [McGaster] found disabled[,]" and only requests a remand for further proceedings in the alternative. (Doc. 13 at 9). The United States Supreme Court has cautioned that a court reviewing an agency decision "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (citation and quotations omitted). In the context of Social Security judicial review specifically, the Eleventh Circuit has recognized that generally remand to the Commissioner for further proceedings is warranted where "the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). While this Court may enter an order

---

examination, when the examining psychologist "expressly ruled out malingering and dissembling" and the ALJ failed to "even acknowledg[e that] determination … , much less articulat[e] reasons to discredit it…").

[17] The undersigned finds it unnecessary to address the remainder of McGaster's claims of error in light of this finding of reversible error.

"awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt[,]" *id.,* McGaster has failed to convince the undersigned that this standard is met here.[18]

Accordingly, the Court finds that the Commissioner's final decision denying McGaster's applications for benefits is due to be **REVERSED** and **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings consistent with this decision.

---

[18] *Compare Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts…The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982."), *with Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."), *and Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

## V.  *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying McGaster's October 7, 2015 application for a period of disability and DIB, and his November 17, 2015 application for SSI, is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further administrative proceedings consistent with this decision.  This remand under sentence four of § 405(g) makes McGaster a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), should McGaster be awarded Social Security benefits on the subject applications following this remand, the Court hereby grants McGaster's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until thirty days after the date of receipt of a notice of award of benefits from the SSA.[19]  Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary."  If

---

[19] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").

multiple award notices are issued for the subject applications, the time for filing a §

406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately in accordance with this order and

Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 19th day of September 2019.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**